2003-NMCA-048

64 P.3d 522

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Christopher PLOUSE, Defendant–Appellant.**

No. 22,398.

Court of Appeals of New Mexico.

Jan. 15, 2003.

Certiorari Denied, No. 27,904, Feb. 25, 2003.

**498**

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Nancy L. Simmons, The Law Offices of Nancy L. Simmons, PC Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant appeals from the judgment entered after a jury found him guilty of Escape from Penitentiary under NMSA 1978, § 30–22–9 (1963). He asserts the violation of his Sixth Amendment rights to effective assistance of counsel and to a speedy trial, and denial of his right to due process. We affirm.

## BACKGROUND

{2} Defendant was convicted of two counts of second degree murder in 1992 and was confined to the Southern New Mexico Correctional Facility (Southern). In 1993 he was transferred to the penitentiary near Santa Fe, New Mexico, allegedly as a result of his failure to become an informant for the prison administration. After placement into involuntary segregation after a stabbing incident and because of the prison administration's fear of further harm to him, he was transferred to the prison in Los Lunas, New Mexico. In an attempt to relieve overcrowding, Defendant was among other prisoners transferred to a Texas county jail for a short time. Upon his return to New Mexico, he was placed back at the penitentiary in Santa Fe. Again, Defendant was placed in involun-

tary segregation by the administration for his protection after another stabbing incident that did not directly involve Defendant. In 1997 Defendant was again transferred to the facility in Los Lunas. In 1999 he went back to Southern and was placed in the close-custody unit and then, after another stabbing unrelated to Defendant, he was placed in segregation for approximately a day, and then was placed back in the close-custody unit. About one month after being returned to the general population, Defendant attempted to escape.

{3} Underneath his shirt, Defendant brought a large rock from an outside work detail into the prison. To avoid disclosure of their plan to escape, Defendant and another inmate waited until the other prisoners were outside for recreation before hammering at the cell wall with the rock. Although Defendant and the other inmate believed that the wall would be hollow, much to their dismay they learned the prison's cinder block walls are filled with cement. Since the escape was going to take longer than originally anticipated, Defendant crafted a cardboard vent cover to hide the large hole in the wall. Once they had finally broken through the concrete wall, Defendant and the other inmate crawled through the ventilation system and crawled across the prison yard toward the fence, at which point they were apprehended.

{4} Defendant was convicted by a jury of escape from a penitentiary, in contravention of Section 30–22–9. On appeal, Defendant does not dispute trying to escape. Rather, Defendant argues that his conviction resulted from ineffective assistance of counsel on three grounds: (1) his attorney's incompetence; (2) the district court's failure to adequately determine whether his waiver of counsel was voluntary, knowing, and intelligent; and (3) his attorney's failure to withdraw while he and his attorney were in conflict. In addition, Defendant contends that his right to a speedy trial was violated, and that he was denied due process because the State failed to produce exculpatory evidence.

## DISCUSSION

### I. Ineffective Assistance of Counsel

#### A. Attorney Competence

{5} Defendant argues that his attorney failed to provide constitutionally adequate as-

sistance by (1) failing to pursue discovery requests, (2) failing to communicate with Defendant prior to and during trial, (3) failing to call witnesses at trial, and (4) making tactical decisions that were fatal to Defendant's defense. Defendant concedes that most of his factual contentions are not of record. Defendant attempted to establish a record by asking this Court to permit him to file an affidavit setting out allegations regarding his attorney. We denied the motion. We have not considered the affidavit. Defendant asks this Court either to reverse and remand for a new trial, or, alternatively, to remand for an evidentiary hearing on the ineffective assistance issue.

{6} The Sixth Amendment of the United States Constitution affords defendants in any criminal prosecution the right to effective assistance of counsel. *See Patterson v. Le-Master,* 2001–NMSC–013, ¶ 16, 130 N.M. 179, 21 P.3d 1032; *State v. Martinez,* 2001–NMCA–059, ¶ 22, 130 N.M. 744, 31 P.3d 1018. "Proof of ineffective assistance is two-fold: (1) Defendant must show that counsel's performance fell below that of a reasonably competent attorney, and (2) Defendant also must prove that the deficient performance prejudiced the defense." *State v. Hester,* 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). "The [d]efendant has the burden of proving both prongs of the test." *Id.* "Counsel is presumed competent unless a defendant succeeds in showing both the incompetence of his attorney and the prejudice resulting from the incompetence." *State v. Jacobs,* 2000–NMSC–026, ¶ 48, 129 N.M. 448, 10 P.3d 127; *see also State v. Trujillo,* 2002–NMSC–005, ¶ 38, 131 N.M. 709, 42 P.3d 814 (providing that defense counsel is presumed effective unless a defendant shows " 'both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice' ") (quoting *State v. Gonzales,* 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992)).

{7} In cases in which further evidence is required for review, we will not remand for an evidentiary hearing unless the defendant first establishes a prima facie case of ineffective assistance of counsel. *See*

*State v. Telles,* 1999–NMCA–013, ¶ 25, 126 N.M. 593, 973 P.2d 845 ("Without a record, we cannot consider Defendant's claim of ineffective assistance of counsel on direct appeal."); *State v. Hosteen,* 1996–NMCA–084, ¶ 6, 122 N.M. 228, 923 P.2d 595 (recognizing that remand is limited to those cases whose records on appeal establish a prima facie case of ineffective assistance of counsel).

### 1. Discovery Requests

{8} The district court issued an order providing that the State and the Department of Corrections "disclosed all relevant documents in their possession" and "fully complied with the Court['s] Discovery Order." Defendant nevertheless claims his attorney failed to effectively pursue the production of certain documents that he requested, which, he contends, would have supported his defense that he escaped because of duress. More specifically, Defendant argues that his attorney failed to acquire his "complete prison file," his "complete medical file," and Security Threat Group documents and that this failure was *"per se* prejudicial." Yet, Defendant admits that his attorney stipulated to the admission of his "entire prison file." Further, while Defendant asserts that the inmate file produced by the State "was *not* Defendant's entire file," he does not provide evidence or descriptions of what was allegedly missing.

{9} Defendant also asserts that his attorney failed to pursue the discovery of Defendant's complete prison file, and that although his attorney did request Defendant's complete medical file and the Security Threat Group documents, these documents were not produced by the State. Defendant's assertions are incorrect. The record shows that Defendant formally requested his complete inmate file, his complete medical file, and copies of any Security Threat Group documents in which Defendant was referenced. The Department of Corrections responded to the request, stating that it would make the documents available, except for certain documents it would not disclose.

{10} After a hearing at which Defendant and his attorney were present, the court entered an order stating that Defendant's

inmate file had been forwarded by the Department to the prosecution, that the court would conduct an *in camera* review of the items the Department refused to disclose, and that Defendant's medical file and the documents relating to the Security Threat Group had been made available to Defendant. The court determined that it would conduct its *in camera* review and make a ruling regarding those documents, and that "[t]he other discovery matters ha[d] been resolved."

{11} At trial, discovery issues were again raised. Defendant personally argued them. The court stated that it was "satisfied that the documents were produced that were available to be produced." Following Defendant's trial, the court entered an order denying Defendant's motion for a new trial or in the alternative to dismiss, in which the court determined that Defendant's attorney "provided competent representation ... throughout discover[y] proceedings" and that "[t]he State and the Corrections Department disclosed all relevant documents in their possession." Based on the record, Defendant has no basis on which to assert that his attorney failed to pursue discovery of the documents in question.

{12} Furthermore, our case law requires a showing, from the totality of the evidence, that there was prejudice. *Jacobs*, 2000–NMSC–026, ¶ 48, 129 N.M. 448, 10 P.3d 127. "The prejudice must be of sufficient magnitude to call into question the reliability of the trial results." *Id.* Defendant has not presented evidence that reaches this magnitude. In addition, Defendant fails to cite any authority for his claim that his attorney's failure to acquire the documents was *per se* prejudicial. Thus, we will not consider Defendant's implicit assertion that no prejudice need be shown. *See State v. Woodward*, 1996–NMSC–012, ¶ 58, 121 N.M. 1, 908 P.2d 231 (noting that we will not consider arguments without citation to authority in support of the arguments), *denial of habeas corpus rev'd in part on other grounds sub nom. Woodward v. Williams*, 263 F.3d 1135 (10th Cir.2001); *State v. Ibarra*, 116 N.M. 486, 490, 864 P.2d 302, 306 (Ct.App.1993) ("We are entitled to assume, when arguments are unsupported by

cited authority, that supporting authorities do not exist.").

{13} We hold that Defendant fails to make a prima facie showing of ineffective assistance of counsel on the discovery claim. *See State v. Reyes*, 2002–NMSC–024, ¶ 48, 132 N.M. 576, 52 P.3d 948 (holding that failure to prove either ineffectiveness or prejudice is sufficient to deny a defendant's ineffective assistance of counsel claim); *see also Smith v. Robbins*, 528 U.S. 259, 286 n. 14, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (internal quotation marks and citation omitted)).

### 2. Communication with Defendant

{14} Defendant contends that his attorney failed to communicate with him. He argues that his attorney "wrote [him] one letter, did not return [his] phone calls, did not reply to any of [his] numerous requests to be contacted, and visited [him] only once, for one hour, a mere two days before trial began." The record on appeal is insufficient to support this contention. *See Telles*, 1999–NMCA–013, ¶ 25, 126 N.M. 593, 973 P.2d 845; *State v. Rickard*, 118 N.M. 312, 317, 881 P.2d 57, 62 (Ct.App.1994) (stating that the Court of Appeals will not review matters that are not of record), *rev'd in part on other grounds*, 118 N.M. 586, 587, 884 P.2d 477, 478 (1994). Defendant thus fails to make a prima facie showing of ineffective assistance of counsel on failure to communicate. *See Hosteen*, 1996–NMCA–084, ¶ 6, 122 N.M. 228, 923 P.2d 595; *see also State v. Chamberlain*, 112 N.M. 723, 734, 819 P.2d 673, 684 (1991) (stating that "the amount of time counsel spent with defendant, without more, does not constitute ineffective assistance of counsel").

### 3. Witnesses

{15} Defendant claims that his attorney "did not interview a single potential witness and did not subpoena six of the seven witnesses from the witness list counsel submitted to the court." Again, this contention is not supported by the evidence contained in the record on appeal. Defendant has not

established a prima facie case of ineffective assistance of counsel given the deficiency of the record. *See Hosteen,* 1996–NMCA–084, ¶ 6, 122 N.M. 228, 923 P.2d 595; *see also State v. Hernandez,* 115 N.M. 6, 17, 846 P.2d 312, 323 (1993) (holding that defendant must show "that but for counsel's unprofessional error, the result of the proceeding would have been different" (internal quotation marks and citation omitted)); *State v. Dartez,* 1998–NMCA–009, ¶ 27, 124 N.M. 455, 952 P.2d 450 (holding a defendant must demonstrate in the record what the beneficial testimony would have been and thereby demonstrate prejudice).

#### 4. Strategy and Tactical Decisions

■ {16} Defendant's final ground for his ineffective assistance of counsel claim is that his attorney "made tactical decisions that were fatal to Defendant's case." Particularly, Defendant claims that (1) counsel's stipulation to the admission of Defendant's entire prison file was "a tactical decision that was detrimental to Defendant's duress defense"; (2) counsel's motion to sever Defendant's trial from co-defendant's trial was "a completely unreasonable decision"; (3) counsel's delay in procuring a Security Threat Group manual deprived counsel of the ability to effectively use the manual in support of the duress defense; and (4) counsel should have argued that the State's failure to produce the manual was a *Brady* violation. *See Brady v. Maryland,* 373 U.S. 83, 86–87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring that a state produce material evidence favorable to matters regarding a defendant's guilt or punishment).

■ {17} As to Defendant's first two contentions, he offers no basis on which to conclude that his attorney's stipulation to the admission of the complete prison file and his attorney's agreement to sever Defendant's trial from that of co-defendant (particularly when viewed in light of Defendant's assertion of his right to a speedy trial) were devoid of any plausible, rational strategy. *See State v. Baca,* 1997–NMSC–059, ¶ 38, 124 N.M. 333, 950 P.2d 776. These decisions are matters of trial strategy and trial tactics. We will not second-guess the trial tactics and strategies

of counsel in reviewing a claim of ineffective assistance of counsel. *Jacobs,* 2000–NMSC–026, ¶ 49, 129 N.M. 448, 10 P.3d 127; *Hester,* 1999–NMSC–020, ¶ 11, 127 N.M. 218, 979 P.2d 729 ("It is not the role of this Court on appeal to second guess trial tactics.").

■ {18} As to Defendant's third contention, Defendant provides no evidence on which to conclude his attorney was incompetent in failing to obtain the Security Threat Group manual earlier. Furthermore, we conclude that Defendant's attorney was not deprived of the ability to effectively use the manual because, while his attorney recognized that it was "really important that the jury understand[ ]" the nature of prison life as detailed in the manual, the attorney determined that he could elicit the necessary information by cross-examination of the prison guards.

■ {19} As to Defendant's fourth contention, that his attorney should have alleged a violation of *Brady,* we hold that counsel's possession of the manual disposes of Defendant's argument. Defendant's attorney obtained a copy of the manual from another prisoner who had received it during the discovery phase of his own trial. *See Rector v. Johnson,* 120 F.3d 551, 558 (5th Cir.1997) (providing that there can be no *Brady* violation for matters known to the defense).

#### B. Waiver of Counsel

[6] {20} Defendant asserts that, because of his frustration and concern about his attorney's representation and receiving a fair trial, on the second day of trial Defendant gave his attorney a list of objections to the representation. He further asserts that his attorney refused to raise any of the objections and told Defendant that the only way he could get the issues before the court was to proceed pro se and raise them himself. The court permitted Defendant to state the objections on the record, and Defendant did so. The court asked Defendant if he wanted his attorney to continue to represent him. Defendant stated he believed he could adequately represent himself. After hearing the court's views on pro se representation, Defendant asked the court to consider an earli-

er "motion for hybrid representation," whereupon the court limited the issue to whether Defendant wanted to represent himself, denying Defendant a new trial, and telling Defendant, "[y]ou may represent yourself pro se if you insist on it."

{21} Defendant does not contend on appeal that the court erred in refusing him a new trial with new counsel. He contends that the district court violated his Sixth Amendment right to counsel by failing to adequately determine whether his decision to waive counsel and represent himself was made voluntarily, knowingly, and intelligently. We review this issue de novo. *See State v. Padilla,* 2002–NMSC–016, ¶ 18, 132 N.M. 247, 46 P.3d 1247.

{22} This Court has recognized that not only does one accused of a crime have a right to counsel, but also that, "[a]s a corollary, the accused has a right to reject counsel and to represent himself." *State v. Rotibi,* 117 N.M. 108, 110, 869 P.2d 296, 298 (Ct.App.1994). In such a case, the district court must conduct an inquiry into whether the defendant is "making a 'knowing and intelligent' waiver of counsel and understands fully the dangers of self-representation." *Id.* (quoting *State v. Castillo,* 110 N.M. 54, 57, 791 P.2d 808, 811 (Ct.App.1990)). The court should inquire about the voluntariness of a defendant's decision when the defendant is left with the choice of proceeding with incompetent counsel or self-representation. *See Castillo,* 110 N.M. at 56, 791 P.2d at 810.

{23} Although "[t]here are no fixed guidelines to determine whether a defendant has knowingly and intelligently waived the right to counsel," we have established certain instructions for the district court. *Rotibi,* 117 N.M. at 110, 869 P.2d at 298 (internal quotation marks omitted). In *Castillo,* we said that the district court is to (1) make "[a] showing on the record ... that a defendant ... has some sense of the magnitude of the undertaking and the hazards inherent in self-representation"; (2) "[e]nsure that defendant has been informed of the nature of the charges, the statutory offenses included within them, the range of allowable punishments,

possible defenses or mitigating factors that might be available to the defendant"; and (3) "admonish [the defendant] that [pro se defendants] will be expected to follow the rules of evidence and courtroom procedure." 110 N.M. at 57, 791 P.2d at 811. We are satisfied that the district court fulfilled the *Castillo* requirements in this case.

{24} After several requests by the court for Defendant to express his objections to his attorney's representation, the court asked whether he wanted his attorney to continue. Defendant stated to the court, "I believe I can adequately represent myself." The district court pointed out the "pitfalls" of self-representation. This exchange followed:

> THE COURT:.... Now, perhaps you're misunderstanding what's been said here. What has been produced is what is available to be produced. And let me read this to you. This is from the case from the Court of Appeals. It discusses your right to represent yourself.
>
> Strategy decisions are clearly the decision that the attorney makes and that's done for a variety of reasons. But let me read this decision to you that when—some of the things it says, if you want to make those decisions yourself you're basically choosing to represent yourself. There's some real—you have an absolute right to do that, but there's some serious pitfalls to doing that.
>
> MR. PLOUSE: I understand that.
>
> THE COURT: Number one, presenting a defense, it's not simply a matter of telling your story or your own theory of the case; you're going to have to take into account the rules of evidence. There are going to be technical rules that govern what you can and can't say. The hearsay objection, for instance, is an excellent example of that.
>
> There are rules of evidence that clearly control what you can and cannot say. And if you choose to represent yourself you're going to be held to the standard of knowing those rules. And if objections are made, you're going to be held to the status of understanding how to respond to them if you think they're not proper objections.

Mr. Bradburn and defense attorneys, in general, have the training and experience that tell them how to properly conduct a trial, how to respond to the rules of evidence, how to make objections based on the rules of evidence. They're skilled in trial procedure and they're also skilled in things exactly as he described that apparently you're unhappy about, and that's the tactics and the way to approach a defense.

I might say I think that Mr. Bradburn brought out quite clearly that your defense is composed basically, really, of two elements, and I understand what you're saying. Nevertheless, how you get that in depends on your strategy and your knowledge of the rules of evidence. You may think there are other documents that exists [sic], but what has been produced is what is available to be produced. Your attorney can't manufacture that which cannot be produced.

I'm still talking.

Thirdly, as I indicated, if you're unfamiliar with procedure, if you're unfamiliar with evidence, and you try to represent yourself and make those kinds of tactical decisions, you're going to be really vulnerable to the prosecutor, who is skilled in strategy and rules of evidence, at a significant disadvantage.

If you choose to represent yourself pro se, or finish this matter out representing yourself pro se, after the Court has told you all these things and warned you as to all these things, you're not going to have the right on appeal to complain what you do or what may be done in turn to you because of your lack of knowledge.

Lastly, I think you need to know your effectiveness in defending yourself is probably going to be greatly diminished by exercising the right to defend yourself pro se as opposed to the right to be represented by an attorney.

Now, I've told you these basic things that this case discusses. Do you want to represent yourself from this point, or do you want Mr. Bradburn to continue to represent you?

MR. PLOUSE: Is it possible for my motion for representation to be considered at this time?

THE COURT: At this time we're probably four-fifths of the way through this case. If you want to represent yourself, acknowledging and understanding these things that I have just indicated to you and read to you, I probably have an obligation to let you do that, but I'm not going to let you abandon that in the middle of a witness in favor of Mr. Bradburn.

{25} In response to hearing the court's view, Defendant decided to proceed with representation. However, before the court restarted the proceedings, Defendant changed his mind and chose to represent himself. Away from the jury, counsel, Defendant, and the court had further discussions.

THE COURT:.... Mr. Plouse, I feel I have to honor your request to finish this matter by representing yourself pro se. I feel obligated as a judge and member of the bar to tell you that I think it's a mistake but, in fact, your decision to make. You will be cross examining this last witness of the State. Whether you call another witness or choose to testify again is up to you, but you're going to be held to the rules of evidence, and you're going to be held to the rules of procedure that involve basically surrebuttal. I want you to know that now.

MR. CLARK [Prosecutor]: I'd like to interject one other thing because I've been here before and I've done this pro se thing, and I've seen some of the problems that occur. I want to put the Court on notice and Mr. Plouse on notice from the outset, one of biggest area[s] where there has been problems—I've had at least one defendant almost leave closing arguments in tears, closing his book and sitting down in frustration—is that it is very hard for somebody who has lived the experience that Mr. Plouse has lived for those years to separate in his mind, clearly, what facts he knows and wants to tell the jury and what facts came into evidence during the trial. And Mr. Plouse will not be allowed to stand up on closing argument and start an explanation. What he can only do is talk

about facts that came out in trial, specific facts that came out in testimony and argue those. And it is incredibly difficult for somebody who has lived all of these facts and all of their details all of these years to do that and I end up just objecting over and over, facts not in evidence, facts not in evidence, facts not in evidence. And it's been very frustrating for people who have tried that.

THE COURT: I want to you [sic] understand when I hold you to the standards of an attorney in making closing argument—

MR. PLOUSE: I understand[.]

These exchanges highlight the depth of the discourse between Defendant and the district court, whereby the court imparted upon Defendant a "sense of the magnitude of the undertaking and the hazards inherent in self-representation" and the expectation that Defendant comport with the rules of evidence and courtroom procedure. *See Castillo*, 110 N.M. at 57, 791 P.2d at 811.

{26} Defendant, nonetheless, contends that the district court did not "ensure that Defendant understood the nature of the charges and the statutory offense, the possible allowable punishments, [and] possible defenses to the charges or mitigating circumstances," in accordance with the second *Castillo* requirement. *See id.* We reject Defendant's rigid interpretation of *Castillo*.

■ {27} The question of whether Defendant's waiver of counsel was knowing and intelligent is contingent on the facts and circumstances of the case. *See Smith v. Maldonado*, 103 N.M. 570, 573, 711 P.2d 15, 18 (1985) (providing that "[t]he focus of the inquiry is on the defendant's understanding"); *see also Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (noting that in determining whether a defendant's waiver of counsel is knowing and voluntary, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand").

{28} Defendant had counsel present in court for his arraignment and thereafter had counsel during virtually all of the pretrial proceedings. Documents filed in Defendant's case reflect that he understood the nature of the contents of the grand jury indictment, which set out the nature of the charges, the statutory offense, and stated that the crime with which he was charged was a second degree felony. In a pretrial, pro se motion to dismiss, Defendant recognized the need for additional documents to buttress his defense, demonstrating that he knew his whole case depended on the duress defense. Defendant was present in court just eleven days before his trial for a pretrial conference. On the first day of trial, the court discussed the manner in which Defendant's duress defense would be presented. The attorneys discussed the defense in their opening statements to the jury. Defendant did not waive counsel until the second day of a two-day trial, after the State had presented its case in chief, the Defendant had presented his case in chief, and much of the direct examination of the rebuttal witness had been presented. Defendant was clearly aware of his defense to the charge, and the court knew it.

{29} During Defendant's lengthy statement of his objections on the second day of trial, he stated:

I think that the totality of all of that shows that the discovery was tampered with and I think they were even obstructing justice. This is very important to my defense because my actual defense is that the—not just worried about harm from the other inmates, but from the prison administrators who were administering me, which made it impossible for me to complain to them about my problem, where they were putting me. I know they were putting me in a dangerous situation, and I knew they'd done it before. That's my defense.

In addition, he stated:

Furthermore, you'll notice that we had a substantial amount of defense witnesses that I wanted called. None of them have showed [sic] up. Some of them were suppose to come from the Department of Corrections. I don't know whose fault that is. If it's the Department of Corrections, then I think that's even further evidence that they're not bringing. They're trying to

slow up my defense, I believe. They've done that with the discovery. It's because of them that my two fellow prisoner witnesses haven't been able to show up. I would image [sic] that's—I would assert they're then obstructing my ability.

Basically, what it boils down to, is I wanted to have a two-part defense, one was that the prison administration was putting my life in jeopardy, and that I had reason to believe that they had done it before, which caused me great bodily harm, then I felt they were doing it again.

{30} We can reasonably conclude that Defendant was fully aware of the nature of the charge and the statutory offense, the possible allowable punishment, and the possible defenses to the charge or mitigating circumstances by the time he chose to represent himself. While we do not suggest that the district court should, under any circumstances, simply assume a defendant's knowledge or understanding or refrain from discussing on the record the underlying circumstances indicating that the defendant knows and understands the material information, we are comfortable that the court in the present case ensured Defendant was adequately informed and that the court substantially complied with the spirit, if not the letter, of *Castillo*.

{31} Defendant also claims that his waiver of counsel was not voluntary because he was presented with an "impossible Hobson's choice" between appearing pro se or proceeding with incompetent counsel. We have recognized that a defendant who must "choose between incompetent or unprepared counsel and appearing pro se faces a dilemma of constitutional magnitude." *Castillo*, 110 N.M. at 56, 791 P.2d at 810 (internal quotation marks and citation omitted). " 'The choice to proceed pro se cannot be voluntary in the constitutional sense when such a dilemma exists.' " *Id.* (quoting *Sanchez v. Mondragon*, 858 F.2d 1462, 1465 (10th Cir.1988), *overruled on other grounds by United States v. Allen*, 895 F.2d 1577, 1580 n. 1 (10th Cir.1990)). In this case, however, there are no matters of record to support Defendant's assertion that his attorney was incompetent or unprepared. We conclude, based on the record before us, that Defendant waived counsel voluntarily, knowingly, and intelligently.

## C. Representation in Conflict

■ {32} Defendant argues that he was denied effective assistance of counsel because his attorney had a conflict. Defendant asserts that the court was aware of his disagreements with counsel over trial preparation, strategy, and tactics. Defendant also raises his attorney's decision not to present Defendant's objections and to leave that to Defendant in a pro se capacity. Defendant argues that the district court "abused its discretion when it did not make an inquiry into the nature of the conflict between defense counsel and Defendant." We are not persuaded. The circumstances do not reflect a conflict of interest that would give rise to a constitutional deprivation. *See generally Martinez*, 2001–NMCA–059, ¶¶ 24–37, 130 N.M. 744, 31 P.3d 1018 (discussing in great detail, circumstances that could warrant either remand or a new trial due to a conflict of interest).

{33} The district court conducted a thorough inquiry into Defendant's reasons for dissatisfaction with his attorney. Defendant's reasons for dissatisfaction were based on his belief that his attorney had failed to acquire and introduce other evidence to show a conspiracy by the prison administration to put Defendant's life in jeopardy, and that his attorney should have obtained and presented additional documents to buttress his duress defense. Defendant's attorney left it to Defendant to present the objections in a pro se capacity. The court asked Defendant to read his objections regarding his attorney. Defendant presented his objections. Defendant raised no argument that would have alerted the district court to find, as Defendant asserts, that his attorney "was no longer representing Defendant's interests, but had begun representing his own," in any sense that would have required the court to find that the attorney was representing Defendant in a forbidden conflict of interest position. Thus, the district court did not abuse its discretion in its inquiry or decision about Defendant's concerns about his attorney.

## II. Speedy Trial

{34} The right to a speedy trial is protected under both the federal and state constitutions. *See* N.M. Const. art. II, § 14; *State v. Marquez,* 2001–NMCA–062, ¶ 8, 130 N.M. 651, 29 P.3d 1052. In assessing a violation of this right, we examine four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Zurla v. State,* 109 N.M. 640, 642, 789 P.2d 588, 590 (1990). While we give deference to the district court's fact finding, we independently examine the record to ensure that no violation has occurred. *State v. Tortolito,* 1997–NMCA–128, ¶ 6, 124 N.M. 368, 950 P.2d 811.

{35} Defendant contends he was denied his right to a speedy trial because one year and nine months had elapsed between his indictment and his trial. Defendant's first of three trial attorneys had five months, after Defendant's arraignment, to prepare for trial and on the eve of the scheduled January 2000 trial requested and obtained a three-month continuance only to withdraw on the eve of the rescheduled April 2000 trial. Defendant's second trial attorney then obtained a six-month continuance and then another continuance four months into which he withdrew in early February 2001. The court scheduled the trial to occur in a little over two months, in April 2001, and appointed another attorney to represent Defendant. Defendant's third trial attorney had about two months to prepare for the April 2001 trial.

{36} The record reveals that Defendant was indicted on July 22, 1999, was represented by an attorney at his arraignment on August 2, 1999, and was appointed another attorney, his first trial attorney, on August 6, 1999. Defendant's case was set for trial as the third alternate trial for January 25, 2000. Defendant's attorney moved on January 19, 2000, for a three-month continuance for the purpose of preparing for trial, and was granted a continuance on January 20, 2000. The court then set the case for trial on April 27, 2000. Defendant alleges his first trial attorney was replaced because of "his almost complete failure to communicate" with Defen-dant, and because of the attorney's failure to acquire Defendant's prison file, medical file, and a grievance filed by Defendant. He also alleges that he subsequently lodged a complaint against this attorney, disciplinary charges were then brought, and the attorney "was subsequently disbarred due, in part, to Defendant's complaint to the State Bar regarding his almost complete failure to communicate with Defendant."

{37} On April 24, 2000, another attorney, his second trial attorney, was appointed to represent Defendant and the same day Defendant was granted a continuance and the April 27, 2000, trial was vacated. On June 20, 2000, the court scheduled the trial for October 24, 2000. On October 5, 2000, the attorney moved for another continuance on Defendant's behalf. At a hearing on October 17, 2000, the court granted the motion and vacated the October 24, 2000, trial setting. The motion for continuance stated that Defendant's attorney and Defendant had had "grave difficulties communicating about the case because of Defendant's incarceration in the Penitentiary of New–Mexico Santa Fe and because of his counsel's schedule," and that the attorney "needs more time to prepare for trial, in particular because it appears that in order to effectively present his defense, Defendant's psychological condition at the time of the commission of the offense needs to be evaluated."

{38} On February 5, 2001, Defendant's second trial attorney moved to withdraw, stating that he could not effectively represent Defendant because on November 13, 2000, he had been barred from practicing before the Court of Appeals, he had been ordered not to appear in district court without co-counsel, and he was unable to obtain co-counsel to assist in his representation of Defendant. On February 6, 2001, the attorney was permitted to withdraw from the case. On February 15, 2001, the court filed a notice setting the case for trial on April 24, 2001.

{39} On February 16, 2001, Defendant filed a pro se motion to dismiss asserting a violation of his Sixth Amendment right to a speedy trial. It is not clear whether this was Defendant's first assertion of the right. In his motion to dismiss, Defendant references

and attaches a letter he allegedly sent to his first trial attorney on August 21, 1999, in which he stated he did not want "extensions on the speedy trial time limit." He states that he wrote more letters to his first trial attorney stating he wanted a speedy trial, and claims that he sent an April 8, 2000, letter to the district judge enclosing a copy of an additional letter he allegedly sent to his first trial attorney on November 10, 1999. He attached the April 8, 2000, and November 10, 1999, letters to his motion to dismiss. In the November 10, 1999, letter, Defendant stated he wanted a speedy trial. In addition, Defendant attached to his motion to dismiss a handwritten "Rough draft for letter written to Judge Stephen Bridgforth on 9/20/00," in which he states: "I worry my trial may have to be postponed again. I don't want this."

{40} On February 27, 2001, a third trial attorney was appointed. Based on Defendant's assertion of his right to a speedy trial, this attorney and the State jointly moved on April 20, 2001, to sever Defendant's trial from his co-defendant's trial, which was granted by an order entered April 23, 2001. Defendant's separate trial began on April 24, and he was convicted on April 25, 2001.

## A. Length of Delay

{41} Defendant asserts that this twenty-one-month delay was "presumptively prejudicial."

"Presumptively prejudicial delay" refers to prejudice to the fundamental right to a speedy trial, not to specific prejudice covered by the fourth [*Barker*] element, much less simply to impairment of the defense at trial. Indeed, we observed in *Zurla*, 109 N.M. at 646, 789 P.2d at 594, once the defendant demonstrates existence of presumptively prejudicial delay, "the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated."

*Salandre v. State*, 111 N.M. 422, 427, 806 P.2d 562, 567 (1991).

{42} In evaluating the *Barker* length-of-delay factor, we examine " 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.' " *State v. Coffin*,

1999–NMSC–038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (quoting *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). We assess the relative complexity of a case to determine whether a delay is prejudicial. *See Salandre*, 111 N.M. at 428 n. 3, 806 P.2d at 568 n. 3 (recognizing that a delay of nine months is presumptively prejudicial for a simple case; a delay of twelve months is presumptively prejudicial for an intermediate case; and a delay of fifteen months is presumptively prejudicial for a complex case). "The question of the complexity of a case is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities." *State v. Manzanares*, 1996–NMSC–028, ¶ 9, 121 N.M. 798, 918 P.2d 714. We give due deference to the district court's findings as to the level of complexity. *Id.; State v. Ortiz–Burciaga*, 1999–NMCA–146, ¶ 30, 128 N.M. 382, 993 P.2d 96; *Tortolito*, 1997–NMCA–128, ¶ 7, 124 N.M. 368, 950 P.2d 811. The district court determined that this case was one of "substantial complexity" as it originally involved two defendants and complex discovery. The parties do not attack the district court's finding with regard to the issue of complexity. *See Ortiz–Burciaga*, 1999–NMCA–146, ¶ 31, 128 N.M. 382, 993 P.2d 96 (accepting court's unchallenged complexity characterization).

{43} We agree with Defendant that the delay was presumptively prejudicial. *See Salandre*, 111 N.M. at 428 n. 3, 806 P.2d at 568 n. 3 (stating that for a complex case, a fifteen-month delay is presumptively prejudicial requiring further inquiry); *Zurla*, 109 N.M. at 642, 789 P.2d at 590 (finding seventeen-month delay presumptively prejudicial). The twenty-one-month period stretched six months beyond our Supreme Court's guideline on complex cases. This factor weighs in Defendant's favor. *See id.* (weighing seventeen-month delay in simple case "somewhat heavily against the state").

{44} Thus, using the *Barker* factors, we must examine the reasons for this delay, Defendant's assertion of his speedy trial

right, and the prejudice to Defendant, to determine whether the State has demonstrated that the twenty-one-month delay did not deprive Defendant of his constitutional right to a speedy trial. *See id; Marquez,* 2001–NMCA–062, ¶ 9, 130 N.M. 651, 29 P.3d 1052 ("Upon finding a presumptively prejudicial delay, we independently balance the *Barker* factors against one another in order to determine whether there has been a constitutional violation."). Defendant contends that each of these weighs in his favor.

## B. Reason for Delay

{45} We examine the reasons for delay, "allocating the reasons for the delay to each side and determining the weight attributable to each reason." *Tortolito,* 1997–NMCA–128, ¶ 8, 124 N.M. 368, 950 P.2d 811. The district court found that "Defendant requested all continuances granted herein and stipulated or jointly requested all extensions granted herein." The State sought no continuances and only moved to extend the six-month rule to accommodate Defendant's continuances. The State opposed one of the continuances because of concern that some witnesses could become unavailable.

{46} Defendant's assertions that he had not consented to certain of the requested continuances, and that one continuance was obtained for the purpose of a psychological examination that was never performed, are unsupported in the record. Nor are there facts of record supporting Defendant's assertion that his attorney's request for a continuance to visit him in Santa Fe should not be considered because his attorney never traveled to Santa Fe for the conference. Defendant at least implicitly argues that the withdrawals of two of his attorneys should be considerations in his favor. That is, while the continuances were requested by Defendant's attorneys, at least two of the more lengthy continuances appear to have been caused by the withdrawals which, in turn, appear to have been caused by the attorneys' alleged inadequate performance and unprofessional conduct.

{47} Based on what we glean from the record, we do not weigh the reasons for delay in Defendant's favor. The delays from continuances were procured or caused by Defendant's attorneys. We are unwilling, without considerably more evidence in the record of the attorneys' behavior and the State's knowledge of such behavior, to relieve Defendant of the burden of continuances requested or caused by his own attorneys. *See In re Darcy S.,* 1997–NMCA–026, ¶ 28, 123 N.M. 206, 936 P.2d 888 (stating that "delays attributable to the defense are not charged against the State").

## C. Assertion of the Speedy Trial Right

{48} Under *Barker* we "assign weight to Defendant's assertion of his right to a speedy trial." *Tortolito,* 1997–NMCA–128, ¶ 15, 124 N.M. 368, 950 P.2d 811. We must examine the timing and manner in which Defendant asserted his right to a speedy trial. *See, e.g., Coffin,* 1999–NMSC–038, ¶ 67, 128 N.M. 192, 991 P.2d 477; *Marquez,* 2001–NMCA–062, ¶¶ 21–22, 130 N.M. 651, 29 P.3d 1052; *Tortolito,* 1997–NMCA–128, ¶¶ 15–17, 124 N.M. 368, 950 P.2d 811.

{49} Defendant relies on the copies of letters he attached to his motion to dismiss to show that his first assertion of a right to a speedy trial was as early as August 1999 and no later than September 2000. However, the only place any of these letters can be found in the record is attached to Defendant's motion to dismiss. There is no indication in the record that any of these letters was received by the district court until the filing of Defendant's motion to dismiss. In response to Defendant's motion to dismiss, the State asserts that "Defendant has never asserted his right to a speedy trial." Defendant's references to, and attachments of, the letters, as a part of his motion to dismiss, are not sufficient to prove a date earlier than February 16, 2001, as the date he first asserted his right to a speedy trial. For these reasons, we conclude Defendant has not made his case for a first-assertion date earlier than February 16, 2001.

{50} Defendant's February 16, 2001, assertion of the speedy trial right does not weigh in Defendant's favor. *Cf. Marquez,* 2001–NMCA–062, ¶ 21, 130 N.M. 651, 29 P.3d 1052 ("While Defendant's demand was made early in the proceedings, the demand was perfunc-

tory in nature and we assign it little weight.").

### D. Prejudice to Defendant

{51} Defendant contends that the "charge of escape submitted him to oppressive pretrial incarceration by the penitentiary administration" because he was "placed in segregation, consisting of twenty-three hours of lockdown security, seven days a week, pending the outcome of his trial." Moreover, Defendant claims that his "anxiety and concern cannot be underestimated." The *Barker* prejudice factor requires inquiry into three types of prejudice: "(1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility of impairment to the defense." *Zurla*, 109 N.M. at 644, 789 P.2d at 592.

{52} Defendant does not claim that the delay impaired his defense. *See Barker*, 407 U.S. at 532, 92 S.Ct. 2182 (noting impairment of the defense is the most serious as it "skews the fairness of the entire system"). Nor does Defendant point to matters of record to show he was placed in involuntary segregation due to the escape charge alone. In fact, it appears that the placement in and removal from involuntary segregation marks much of Defendant's stay with the Department of Corrections.

{53} While we can assume that Defendant had some measurable anxiety and concern usually attendant when a person awaits trial, no record exists of any particular amount or degree of anxiety and concern, or of when any anxiety and concern of any significant level first arose. Nor has Defendant shown any circumstances from which the court could have concluded that Defendant suffered emotional trauma so as to "substantially tip the prejudice prong in [Defendant's] favor." *Salandre*, 111 N.M. at 430, 806 P.2d at 570; *see also United States v. Henson*, 945 F.2d 430, 438 (1st Cir.1991) ("[C]onsiderable anxiety normally attends the initiation and pendency of criminal charges; hence only 'undue pressures' are considered."); *United States v. Gomez–Villamizar*, 762 F.Supp. 1550, 1552 (D.Puerto Rico 1991) ("While pretrial incarceration ordinarily causes hardship and anxiety, defendant has not alleged any undue prejudice beyond what could normally be expected."). *Henson* and *Gomez–Villamizar* are quoted by our Supreme Court in *Coffin* stating that "the constitutional inquiry focuses on undue prejudice." *Coffin*, 1999-NMSC–038, ¶ 69, 128 N.M. 192, 991 P.2d 477.

{54} Further, it would appear that any anxiety and concern Defendant may have had stemmed more from his fears related to his continuing and future incarceration due to his earlier convictions and not related to any extended time awaiting trial on the escape charge. Defendant was already incarcerated and subject to the assault and poor treatment he alleges. Therefore, he does not establish prejudice based on the delay between assertion of his speedy trial right and his trial. We conclude the *Barker* prejudice factor does not weigh in Defendant's favor.

### E. The Balance of the *Barker* Factors

{55} No one of the four *Barker* factors constitutes "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182. While the length of the delay was a factor weighing in Defendant's favor requiring inquiry into the remaining three *Barker* factors, we cannot conclude that any other factor weighs in Defendant's favor. Thus, on balance, we conclude the *Barker* factors do not weigh in Defendant's favor.

### III. *Brady* Violation Claim

{56} Defendant contends the State violated the *Brady* requirement to disclose material evidence. *See Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Defendant claims that the State failed to produce: (1) Security Threat Group documents, (2) Defendant's medical file, (3) investigative materials regarding an escape by another inmate, (4) pictures of Defendant's stab wounds from other inmates, (5) administrative segregation placement forms, and (6) the original grievance appeal response to Defendant's complaint regarding his stolen watch. The record, however, reveals that Defendant failed to properly preserve a *Brady* claim. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.

1986) (requiring parties to apprise the court of the nature of the claimed error and to invoke ·a ruling by the court). Defendant failed to specifically raise the *Brady* issue or to invoke a ruling on the issue. Defendant merely claimed that discovery was incomplete at the trial level.

{57} Moreover, based on Defendant's contention that discovery was incomplete, the district court examined Defendant's claim and concluded that the State had "fully complied with the Court['s] Discovery Order" and had "disclosed all relevant documents in their possession." While at trial, Defendant claimed that certain documents were missing from his inmate file. The district court determined this issue against him. We decline Defendant's offer to disregard the district court's finding and to resolve this factual issue in his favor. *See State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (recognizing "the district court is in the best position to resolve questions of fact"). Thus, even had the issue been preserved, Defendant fails to produce evidence proving a constitutional violation under *Brady*.

## CONCLUSION

{58} We affirm.

{59} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.