This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                                                                    **NO. 30,697**

**LANCE PATRICK JOSEPH KELLY,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Chief Public Defender
Nancy Hewitt, Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

    The State appeals from the district court's dismissal based on a violation of

Defendant's constitutional speedy trial rights. Our notice proposed to affirm and the State filed a timely memorandum in opposition pursuant to a granted motion for extension of time. We remain unpersuaded by the State's arguments and therefore affirm.

**Issues**

The State's issues relate to the central contention that the district court erred in dismissing the case based on speedy trial grounds. [DS 5-6] This Court applies the four-factor balancing set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine whether a defendant's constitutional right to a speedy trial has been violated. *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. Under the *Barker* test, we balance, in light of the facts and circumstances of the particular case, (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Id.*

The first factor, the length of the delay, involves a two-fold inquiry. *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. We consider first whether the length of the delay was presumptively prejudicial, and, if so, we then balance the four *Barker* factors to assess whether the defendant's constitutional rights have been violated. *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387. We are deferential to the district court's fact finding, but independently examine

the record to determine whether a speedy trial violation has taken place. *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. We analyze speedy trial claims on a case-by-case basis, examining all four factors in order to weigh the conduct of both the prosecutor and defense, with no one factor as dispositive. *State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061.

**Length of Delay and Assertion of the Speedy Trial Right**

The State does not contest our analysis regarding the length of delay and Defendant's assertion of his right to a speedy trial. [MIO 1-2] As addressed in our notice, the twenty-five month delay exceeds the presumptively prejudicial fifteen-month period by ten months, and the length of delay is weighed against the State. Further, Defendant asserted his right to a speedy trial at least six times, which also weighs this factor against the State.

**Reasons for Delay**

The State argues that "most of the delay in this case was justifiable and should not be held against either party." [MIO 3] We disagree and instead agree with the district court's conclusion that "the delay primarily rests with the State's inability to collect discovery and conduct witness interviews." [RP 256] As noted by the district court [RP 256], twenty-one days before the initial July 13, 2009, trial date, the State added five more witnesses to its amended witness list and was unable to conduct

3

interviews before the scheduled trial [RP 256], thereby requiring an extension. [RP 104, 111] Further, although Defendant did not oppose the State's initial two requests for continuances and resultant six months of delay, [RP 30, 52, 147, 170-71] the record provides that the lack of opposition was because the State had failed to provide needed discovery with regard to safe house videos and interviews of the State's witnesses. [RP 147, 153, 168, 171, 178, 227] *See, e.g.*, *State v. Johnson*, 2007-NMCA-107, ¶¶ 15, 25, 142 N.M. 377, 165 P.3d 1153 (holding that the delay resulting from the state's failure to make its witnesses available for pretrial interviews, which in turn prevented the defendants from preparing for trial, was delay attributable to the state and, thus, weighed against it for purposes of the speedy trial analysis). In this regard, the State acknowledges that much of the delay was caused by locating and providing a 2001 safe house interview tape. [MIO 4]

The State argues, however, that the delay should not be counted against the State because the 2001 safe house interview was not readily accessible to the Second Judicial District from the Thirteenth Judicial District and because it was not relevant to the case. [MIO 4] The State's assessment of the value of the safe house interview to the defense is not a valid reason for any delay in providing the interview. And while the State's difficulty in accessing the records may not have been intentional or to gain a strategic advantage, it is nevertheless weighed against the State. *See Garza*,

4

2009-NMSC-038, ¶ 26 (providing that negligent delay weighs "less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

Apart from any discovery delays, the State also argues that "[a]pproximately the last nine months of delay should be held either against Defendant or should be considered justifiable delay and not held against either party." [MIO 3] In this regard, the State argues that the judge's unexpected recusal on the day of the scheduled January 25, 2010, trial [RP 140] which caused an additional six-month delay at the end of the twenty-five month period should not be held against the State. However, unlike *State v. White*, 118 N.M. 225, 226, 880 P.2d 322, 323, [MIO 5] where the delay was caused by a judge's surgery and recovery time, the delay in this case was caused by the judge's unexpected recusal and the resultant time it took to replace the judge and schedule another trial. [MIO 6] We view this as falling within the administrative burdens on the criminal justice system, which is considered negligent delay and is weighed against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (providing that delay attributable to the unavailability of a judge is negligent delay for which the state is responsible). Moreover, even if the final few months of the delay were to accommodate defense counsel [MIO 6; RP 201, 204, 211], this does not negate the greater amount of delay that was attributable to the State.

In the end, although none of the delay in this case was the consequence of intentional delay caused by the State, the case was nonetheless delayed ten months beyond the presumptively prejudicial period for intermediate cases, predominantly due to the State's failure to complete discovery matters and to negligent and administrative delay. Ultimately, it is the state's burden to bring a defendant to trial. *See State v. LeFebre*, 2001-NMCA-009, ¶ 9, 130 N.M. 130, 19 P.3d 825 (holding that the state bears the primary responsibility for bringing cases to trial within a reasonable time). We accordingly weigh the delay factor against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (providing that the weight counted against the state for a negligent delay depends on the amount of time that has passed beyond the threshold required to trigger the speedy trial inquiry).

**Prejudice**

As set forth in our notice, we consider three types of prejudice relevant to the speedy trial analysis: (1) oppressive pretrial incarceration; (2) the accused's anxiety and concern; and (3) the possibility of an impairment to the defense. *See Plouse*, 2003-NMCA-048, ¶ 51, 133 N.M. 495, 64 P.3d 522. To support a finding of prejudice, "the evidence [must show] a nexus between the undue delay in the case and the prejudice claimed." *Salandre v. State*, 111 N.M. 422, 431, 806 P.2d 562, 571 (1991), *modified on other grounds by Garza*, 2009-NMSC-038, ¶¶ 19-22.

In the present case, Defendant spent over two years in jail. **[RP 259]** Given that ten of the twenty-five months exceeded the fifteen-month intermediate minimum, we agree with the district court's finding that the incarceration was oppressive. [RP 259] *See State v. Moreno*, 2010-NMCA-044, ¶ 37, 148 N.M. 253, 233 P.3d 782 (concluding that the defendant suffered some prejudice from being incarcerated pending trial for almost two years); *State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (recognizing that the presumption that pretrial delay has prejudiced the accused intensifies over time).

We further agree with the district court that Defendant's defense was potentially compromised as a result of the delay. [RP 260] *See Garza*, 2009-NMSC-038, ¶ 36 (recognizing that prejudice to the defense is the most serious type of prejudice). During the delay beyond the presumptively prejudicial period, a witness (Defendant's girlfriend) whose testimony Defendant intended to offer in support of his character died. [RP 229] We do not consider it determinative that Defendant's girlfriend was on the State's witness list, rather than on Defendant's witness list. [MIO 7] Instead, we consider that Defendant planned to call his girlfriend for purposes of presenting the jury "with a compelling picture [of Defendant] as the concerned and appropriate parent he has been for his children and step children." [RP 229] Because his girlfriend died during the delay, Defendant was unable to preserve her testimony.

[MIO 8] And because this case appears to have boiled down to a swearing match between Defendant and Victim, [RP 151, 224] we conclude that the loss of this potential witness was prejudicial to the defense because she was intended to bolster Defendant's credibility.

We acknowledge the State's argument that the girlfriend's testimony was irrelevant because she never observed any interactions between Defendant and the Victim [MIO 7] (who was the daughter of a woman with whom Defendant "was a roomer" DS 3) and because Defendant's interactions with children other than the Victim did not reflect on his guilt or innocence with regard to Victim. [MIO 8; RP 181] However, while Defendant may have been able to elicit testimony about his treatment of children from his own children and step children [MIO 8] and while the State questions the evidentiary weight of the evidence, it nonetheless was reasonable for Defendant to assert that his girlfriend's view of his interactions with children was useful to his defense. *See generally* Rule 11-404(A)(1) NMRA (character of accused). Last, while the girlfriend was deceased at the time the first judge considered and denied Defendant's previous January 8, 2010, motion to dismiss, [DS 5] it was within the second judge's prerogative as fact finder to determine that the loss of the witness prejudiced Defendant, [RP 260-61] albeit perhaps only slightly. *See State v. Marquez*, 2001-NMCA-062, ¶ 12 (recognizing that the presumption that pretrial delay has

prejudiced the accused intensifies over time.

**CONCLUSION**

Having analyzed each of the *Barker* factors, we now balance them. Because all of the *Barker* factors weigh against the State, including the prejudice factor, we affirm. *See Salandre*, 111 N.M. at 425, 431, 806 P.2d at 565, 571 (concluding that it was a "close case" but that the defendant's speedy trial rights were violated where the prejudice was slight and the other three factors weighed in his favor "but not heavily").

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**