2007-NMCA-107

165 P.3d 1153

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Brian JOHNSON, Defendant–Appellant.**

**No. 25,788.**

Court of Appeals of New Mexico.

June 20, 2007.

Certiorari Denied, No. 30,538,
Aug. 8, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The State failed to bring this case to trial for over twenty-six months. We hold this delay deprived Defendant of his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution, and reverse.

## BACKGROUND

{2} On the morning of August 19, 2002, police responded to a call from a motel regarding a deceased woman found in one of the rooms. Defendant was arrested on August 20, 2002, on the charges that were subsequently contained in the indictment, and his arrest also resulted in his being held without bond on a probation violation in an unrelated case. The indictment was filed on September 13, 2002, charging Defendant with an open count of murder, kidnapping, and two counts of criminal sexual penetration, and bond was set in the amount of $250,000 at Defendant's arraignment on September 23, 2002. The deadline to commence trial under the Rules of Criminal Procedure for the District Courts was March 23, 2003. Rule 5–604(B)(1) NMRA (requiring commencement of trial within six months after arraignment in the district court). However, trial did not commence at that time because the State obtained extensions of time to commence trial from both the district court and from the Supreme Court. Rule 5–604(C), (D) (stating that the district court may extend time to commence trial for up to three months and the Supreme Court may further extend time to commence trial). Since his arrest, Defendant remained in custody on both the indictment and the probation violation. Trial did not take place until November 23, 2004, twenty-six months and ten days after the indictment was filed.

{3} Defendant tried to interview the State's witnesses. However, the prosecutor failed to schedule interviews despite her repeated assurances that she would, and despite being granted repeated extensions of time to do so by the district court and the Supreme Court. Defendant and the district court learned for the first time on October 29, 2004, that the prosecutor who handled the

case from the time the indictment was filed had "PTSD, depression and anxiety" and for that reason was unable to prepare the case for trial. Defendant filed a motion to dismiss the indictment on November 5, 2004, alleging his constitutional right to a speedy trial was violated, and the district court denied the motion on November 18, 2004, five days before the trial.

{4} The district court granted Defendant's motion for a directed verdict on the charge of willful and deliberate first degree murder, and the jury failed to agree on the felony murder, second degree murder, and manslaughter charges submitted to it as alternative and lesser included offenses. The jury found Defendant guilty of one count of false imprisonment and two counts of criminal sexual penetration. Defendant appeals.

## ANALYSIS

{5} The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "It is primarily the responsibility of the State to bring a case to trial within a reasonable period of time." *State v. Marquez*, 2001–NMCA–062, ¶ 8, 130 N.M. 651, 29 P.3d 1052. The factors we balance to determine whether Defendant's constitutional right to a speedy trial was violated are well settled. These are: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *See State v. Harvey*, 85 N.M. 214, 215–18, 510 P.2d 1085, 1086–89 (Ct.App.1973) (noting that *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), requires these four factors to be weighed in analyzing a constitutional speedy trial claim). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Tartaglia*, 109 N.M. 801, 802, 791 P.2d 76, 77 (Ct.App.1990) (citation omitted). On appeal, we give deference to the factual findings of the district court; nevertheless, we are required to independently evaluate the four *Barker* factors to

ensure that the constitutional right has not been violated. *State v. Talamante*, 2003–NMCA–135, ¶ 3, 134 N.M. 539, 80 P.3d 476.

## 1. Length of the Delay

{6} This factor serves dual functions. *State v. Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. "Initially, the length of delay must cross a threshold to establish a presumption of prejudice and to trigger further inquiry into the other factors." *Id.* After a presumption of prejudice is established, "the burden of persuasion shifts to the State to show that, considering the four factors as a whole, [D]efendant's constitutional rights [to a speedy trial] have not been violated." *Id.; see State v. Lujan*, 2003–NMCA–087, ¶ 4, 134 N.M. 24, 71 P.3d 1286 (stating that when the length of the delay triggers the presumption of prejudice, the burden is on the State to demonstrate that it did not violate the defendant's constitutional speedy trial right); *Salandre v. State*, 111 N.M. 422, 429, 806 P.2d 562, 569 (1991) ("When the state has delayed long past the time considered presumptively prejudicial, its burden to show on the record that [the] defendant's right to a speedy trial was not violated becomes correspondingly heavier.").

{7} Defendant's constitutional right to a speedy trial attached on September 13, 2002, when the indictment was filed. *See Talamante*, 2003–NMCA–135, ¶ 4, 134 N.M. 539, 80 P.3d 476. Trial commenced on November 23, 2004, twenty-six months later. In *Salandre*, 111 N.M. at 428 n. 3, 806 P.2d at 568 n. 3, the New Mexico Supreme Court explained that a presumption of prejudice occurs after nine months for simple cases, after twelve months for intermediate complexity cases, and after fifteen months for complicated cases. The district court found that this case was an "extremely complex" case because of the number of witnesses, many of whom have a transient lifestyle, and because of the complicated crime scene investigation. The parties dispute whether the district court's characterization is correct. However, we give deference to the district court's finding, *see State v. Coffin*, 1999–NMSC–038, ¶ 57, 128 N.M. 192, 991 P.2d 477 ("[W]e have determined that the trial court is

in the best position to determine the complexity of a case[.]"); *State v. Plouse*, 2003–NMCA–048, ¶ 42, 133 N.M. 495, 64 P.3d 522 ("We give due deference to the district court's findings as to the level of complexity."), and assume that this is in fact an "extremely complex" case.

{8} Fifteen months of delay for a complicated case establishes presumptive prejudice under *Salandre*, and the delay in this case is over eleven months longer than that. We therefore conclude that the twenty-six-month delay weighs against the State. *See Talamante*, 2003–NMCA–135, ¶¶ 1, 21, 134 N.M. 539, 80 P.3d 476 (holding that a thirty-one-month delay in an intermediate or complex case weighed heavily in favor of the defendant); *Plouse*, 2003–NMCA–048, ¶¶ 42–43, 133 N.M. 495, 64 P.3d 522 (finding that a twenty-one-month delay in a substantially complex case to weigh in the defendant's favor); *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (weighing a seventeen-month delay in a simple shoplifting case somewhat heavily against the State).

## 2. Reasons for the Delay

{9} The district court concluded that seventeen months of the delay weigh against Defendant or neither party, and that less than eleven months weigh against the State. We disagree.

{10} The reason for the delay was succinctly summarized by defense counsel in a motions hearing on November 15, 2004, after the motion to dismiss the indictment was filed. Counsel said, "I actually relied on the State's representations to me that these witness interviews [of the State's witnesses] were going to be put together and that they were going to be done before the deadline came and went." Defense counsel added that the prosecutor "represented to me back last spring, almost a year ago, that this was actually going to happen, and there [were] any number of reasons why she kept not putting those together." Over the summer defense counsel had been in the district attorney's office in an unrelated case, saw the prosecutor several times, and asked her to set up the interviews, but they were not set up.

The pretrial came and went on September [9, 2004,] when the [c]ourt set a deadline [of October 18, 2004, to complete the interviews,] and she simply did not put any of it together, and then came after that deadline, she simply just refused to do any more on this case and would not-and [said she] would quit her job rather than do anything on this case. So we were left in the lurch, due to the representations of the State that were never carried out.

{11} When analyzing the reasons for delay in this case, we are mindful of the well-established principle that "[t]he State has a constitutional duty to make a diligent, good-faith effort to bring Defendant to trial." *Marquez*, 2001–NMCA–062, ¶ 15, 130 N.M. 651, 29 P.3d 1052. In this case, three periods of delay emerge.

## A. September 13, 2002 to September 17, 2003

{12} The indictment was filed September 13, 2002, and the case was originally set on the trial docket for March 17, 2003, but "[t]he case was continued to the next trial docket for the reason that witness interviews have just started." On February 28, 2003, the State filed a Rule 5–604 petition in the district court seeking an extension of time until June 23, 2003, to commence trial because, "[t]here is a great deal of scientific evidence gathered and tested in this case. Not all discovery is yet complete. Witness interviews need to be completed." The district court granted the State's petition on March 5, 2003, extending the time to commence trial to June 23, 2003, and on April 3, 2003, the district court set the matter for trial to commence on June 9, 2003. For reasons not disclosed by the record, the district court on May 27, 2003, reset the trial to commence on August 25, 2003.

{13} On June 11, 2003, the State filed a Rule 5–604 petition in the Supreme Court seeking an extension of time to commence trial until December 23, 2003. The prosecutor sought an extension of time because,

[Defendant] has requested the bench notes of the DNA testing that has so far been completed in this case. The defense will

need to review the notes and will likely have to hire an expert to examine the techniques and results used in the DNA testing. Additional interviews need to be completed with regard to trial preparation. On June 24, 2003, the Supreme Court granted the petition. After the Supreme Court granted the extension, the State stipulated to defense counsel's request to vacate the August 25, 2003, trial setting because, "trial preparation was needed and witness interviews had not been completed." On July 22, 2003, the district court set the matter for trial to commence on October 13, 2003. This notice of setting was then "revised" on August 26, 2003, with a trial setting of October 14, 2003.

{14} Defendant was represented by the district defender until the Office of the Public Defender reassigned the case to two attorneys in the Capital Crimes Unit in September 2003. At a pretrial conference on September 17, 2003, newly assigned counsel stated that trial prior to March 2004 was unrealistic due to other trials already scheduled for the Capital Crimes Unit that spring. The October 13, 2003, trial was therefore rescheduled to commence on March 8, 2004.

{15} We conclude that this entire period of delay occurred because the State failed to make its witnesses available for pretrial interviews so that Defendant could prepare for trial. We therefore attribute this delay to the State. *See Talamante,* 2003–NMCA–135, ¶ 14, 134 N.M. 539, 80 P.3d 476 (stating that delays caused by State's failure to produce its witnesses for interviews were attributable to the State); *Zurla,* 109 N.M. at 643, 789 P.2d at 591 (stating that delay caused by failure to take reasonable means to bring a case to trial is weighed against the State).

**B. September 17, 2003 to March 8, 2004**

{16} The second period of delay is from September 17, 2003, when the October 13, 2003, trial setting was vacated at the request of new counsel representing Defendant from the Capital Crimes Unit, until March 8, 2004, when the trial was reset. This is a period of slightly less than six months. We attribute this delay to Defendant. *See State v. Barefield,* 92 N.M. 768, 771, 595 P.2d 406, 409

(Ct.App.1979) (agreeing with the district court that part of the delay was due to change of counsel). *But cf. State v. Stock,* 2006–NMCA–140, ¶ 26, 140 N.M. 676, 147 P.3d 885 ("To the extent that [defense counsel] delays can be blamed on the overburdened [public defender] system, that . . . cannot be held against Defendant.").

**C. March 8, 2004 to November 23, 2004**

{17} The third period of delay we consider is from March 8, 2004, until the trial commenced on November 23, 2004, a period of more than eight months.

{18} The March 8, 2004, trial setting was beyond the existing December 23, 2003, extension of time previously granted by the Supreme Court to begin trial. The State therefore filed a second Rule 5–604 petition in the Supreme Court on December 16, 2003, seeking an extension of time until June 23, 2004, to commence trial. The petition asked for the extension because, "additional interviews of State's witnesses need to be conducted and concluded, including the DNA analyst." The petition was granted on December 29, 2003. On January 29, 2004, the district court held a hearing and ordered that the March 8, 2004, trial setting be continued because, "witness interviews cannot be completed before late March at the earliest."

{19} On February 4, 2004, the district court set the trial to commence on May 3, 2004. Defense counsel sent the prosecutor an e-mail on March 10, 2004, requesting that she set up interviews of the State's witnesses that month. She responded the following day, "I will arrange all of the [interviews] except for the kids as soon as possible," but then did nothing. At a pretrial conference on April 7, 2004, the district court was advised that a very large number of the State's witnesses still had not been interviewed. The prosecutor said that it was not likely that they could be completed prior to the May 3, 2004, trial date because of the schedules of the respective attorneys. Defense counsel advised that if the trial did not take place in the first week of May as scheduled, trial could not take place until the fall, given their existing trial schedules. The district

court ordered that witness interviews be completed by April 28, 2004.

{20} Thereafter, on April 23, 2004, the district court reset the trial to commence on June 21, 2004; and on May 4, 2004, the district court again reset the trial to commence on October 18, 2004. On June 17, 2004, the district court granted defense counsel's unopposed motion to vacate the October 18, 2004, trial setting until the following week on October 25, 2004, because defense counsel had another murder trial that was scheduled to commence on October 5, 2004, and to conclude on October 19, 2004. Instead of one week later, the trial was rescheduled for November 8, 2004.

{21} On June 23, 2004, the day the previous extension granted expired, the State filed a third Rule 5–604 petition in the Supreme Court seeking an extension of time until December 23, 2004, to commence trial, asserting that defense counsel was not able to try the case before November 2004. The petition was granted on July 2, 2004, and the Supreme Court further ordered, "no further extensions will be granted."

{22} A pretrial conference was held on September 9, 2004, in anticipation of the November 8, 2004, trial setting. At that time, the prosecutor advised that she would arrange for the witness interviews to be taken the following week, and that she would make a plea offer. The district court ordered that interviews of the State's witnesses be completed by October 18, 2004. However, since the prosecutor had not scheduled interviews of the State's witnesses as of October 14, 2004, Defendant filed a motion seeking an order of the court prohibiting the State from calling those witnesses who had not been interviewed. On October 18, 2004, when defense counsel was out of town, the prosecutor left a voice mail message asking defense counsel to call her. The call was returned the next day, October 19, 2004, and the prosecutor said that she had not prepared a plea offer and suggested that interviews of the State's witnesses be scheduled. Defense counsel declined since pretrial motions were due on that day per the order of the court.

{23} On October 27, 2004, the prosecutor called defense counsel, crying. The prosecutor stated, "I have to let these cases go," and requested a meeting with the district court to discuss a continuance. A meeting was held with the district court in chambers two days later on October 29, 2004. The prosecutor said she "can't do the trial now," because she had "PTSD, depression and anxiety." She also reported she is "now making decisions in my own best interests and not the best interest of the State." She said her "shrink" had told her that she was "under stress." The prosecutor advised the district court that she was not ready for trial, that she had no intention of going forward with the trial, and that she would rather quit her job with the district attorney's office than go to trial. The prosecutor advised the court that she had arranged to have co-counsel assigned to the case as of the previous Monday, October 25, 2004, but co-counsel could not possibly be ready for trial by the scheduled trial date of November 8, 2004. Defense counsel objected to the continuance requested and said that he would oppose any request for a rule extension beyond the current date of December 23, 2004, because Defendant had already been in custody for twenty-six months, and the defense had been trying without any success to finish interviewing the State's witnesses. The district court attempted to set the trial on various alternative dates before the existing deadline of December 23, 2004, and the prosecutor insisted several times that she would not try the case on any of the dates proposed and said, "If it's a choice between trying my case and quitting my job at the DA's office, I will quit my job." After additional discussion of the court's availability for a trial, the court reset the trial to commence on November 15, 2004.

{24} On November 3, 2004, the State filed its fourth Rule 5–604 petition with the Supreme Court, seeking an extension of time until April 23, 2005, to bring the matter to trial. The petition disclosed that the same prosecutor had represented the State from the time the indictment was filed, and that on October 26, 2004, she sought mental health treatment and disclosed her difficulties to her supervisor. Since any further involvement in the case by this prosecutor was regarded as detrimental to the case as well

as to her mental health, the case had been reassigned to a new prosecutor, and the extension was requested to allow the newly assigned prosecutor to prepare for trial and to accommodate the district court's existing schedule. The Supreme Court denied the State's petition on November 9, 2004. Defendant's motion to dismiss the indictment for violating his constitutional right to a speedy trial under the United States and New Mexico constitutions, filed November 5, 2004, was denied on November 18, 2004. Trial started on November 23, 2004, twenty-six months after the indictment was filed.

{25} We attribute this entire period of delay to the State except for approximately one month (from October 18, 2004 to November 8, 2004), when the trial was continued at the request of defense counsel. Again, the delay occurred because the State failed to make its witnesses available for pretrial interviews, despite repeated promises that it would do so, and despite being granted repeated opportunities to do so. *Talamante*, 2003–NMCA–135, ¶ 14, 134 N.M. 539, 80 P.3d 476; *Zurla*, 109 N.M. at 643, 789 P.2d at 591.

### 3. Assertion of the Right

{26} The district court weighed this factor in Defendant's favor. We agree with the district court.

{27} "[T]he assertion of the right [to a speedy trial] is entitled to strong evidentiary weight in deciding whether a speedy trial violation has taken place." *Zurla*, 109 N.M. at 644, 789 P.2d at 592. In this case, Defendant demanded a speedy trial on September 20, 2002, shortly after he was indicted. Defendant then took "no position" on the State's Rule 5–604 petition filed in the district court on February 28, 2003. However, Defendant objected to the Rule 5–604 petitions filed by the State in the Supreme Court on June 11, 2003, on June 23, 2004, and on November 3, 2004. The only Rule 5–604 petition that Defendant did not object to was on December 16, 2003, because the petition was requested to give Defendant an opportunity to interview the State's witnesses. In addition, Defendant objected to a continuance of the trial on October 29, 2004, and Defendant filed a motion to dismiss the indictment for a violation of his constitutional right to a speedy trial on November 5, 2004. This factor therefore weighs in Defendant's favor. *See Talamante*, 2003–NMCA–135, ¶ 15, 134 N.M. 539, 80 P.3d 476 (concluding that when the defendant asserted his right to a speedy trial when counsel entered his appearance; filed motions to compel the State to produce its witnesses; objected to several of the State's Rule 5–604 petitions; and filed a motion to dismiss based on a violation of his right to a speedy trial, the defendant's assertion of his right to a speedy trial was sufficient to weigh in his favor and against the state); *Marquez*, 2001–NMCA–062, ¶¶ 21–22, 130 N.M. 651, 29 P.3d 1052 (concluding that the defendant's demand for a speedy trial filed shortly after arraignment, his motion to dismiss on speedy trial grounds filed six days before trial, and his objection to the State's Rule 5–604 petition were sufficient assertions of his right to a speedy trial to weigh in his favor and against the state).

### 4. Prejudice to Defendant

{28} The district court concluded that the delay in this case resulted in little, if any, prejudice to Defendant. We conclude that the State failed to overcome the presumption of prejudice which resulted from the unusually long delay in this case, that Defendant established prejudice resulting from the delay, and that this factor therefore also weighs in Defendant's favor.

{29} In *Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990), the Supreme Court reiterated what it had previously said in *Zurla*, 109 N.M. at 646, 789 P.2d at 594:

> Once the defendant has demonstrated presumptively prejudicial delay and thus triggered the *Barker v. Wingo* analysis, the presumption of prejudice does not disappear. Rather, the burden of persuasion rests with the state to demonstrate that, on balance, the defendant's speedy trial right was not violated.

(internal quotation marks omitted). The State can discharge its burden in a variety of ways by showing that one or more of the following circumstances exist: "There were

good reasons for the delay; the defendant did not timely assert his right and acquiesced in the delay; or the defendant was not actually prejudiced by the delay." *Work,* 111 N.M. at 147, 803 P.2d at 236. In addition, "[o]n the question of prejudice, the delay may be so lengthy that the presumption of prejudice becomes well-nigh conclusive and proof of actual prejudice is unnecessary." *Id.* at 148, 803 P.2d at 237.

{30} Defendant's trial did not take place for twenty-six months. Prejudice is presumed in a complicated case after fifteen months, and this case exceeded that time by eleven months. Thus, the presumption of prejudice is operative. Moreover, Defendant argued actual prejudice in two particulars.

{31} First, Defendant was incarcerated from the time he was arrested in this case until his trial. The State argues that since Defendant was also incarcerated for a probation violation on an unrelated case, Defendant suffered little, if any, prejudice. We disagree. At the hearing on Defendant's motion to dismiss, defense counsel responded to the same assertion that was made at that time:

> [I]t's incorrect to say that he's in prison for something that has nothing to do with this case. He was arrested in this case, taken into custody and he's never been released. He's in custody now because of a probation violation that occurred as a result of his being arrested in this case, therefore, it has everything to do with this case and not nothing, as [the prosecutor] contends.
>
> The prejudice that [Defendant] has suffered is both personal and substantive. Personal prejudice arises from the fact that he's been in custody, both for the probation violation resulting from the arrest of this case, but also from the fact that his classification is made higher, not for some mysterious reason that no one knows, but that his classification is higher because he has murder charge pending- murder charges pending in this case. These charges are very serious, and because of that, he's housed in a way that he would not be otherwise had he been simply arrested and put into prison solely on a

> probation violation for something unrelated, as [the prosecutor] contends.
>
> So it's very incorrect to say that he has suffered no prejudice and that the classification has nothing to do with the issue. It has everything to do with it.

{32} Second, Defendant argued he was actually prejudiced in his defense by the delay. Because interviews of the State's witnesses were not arranged in a timely manner, and trial was held immediately after the prosecutor made her disclosures to the court and defense counsel, there was insufficient time to follow up on any information the interviews might have provided before the trial; telephone records that might have contained exculpatory information were purged after six months; and he argued that potentially exculpatory witnesses might not be available because many of the named witnesses were transients. Finally, when trial started, Defendant still did not have a report prepared by the lead detective in the case, or a CD with all the State's photographs.

{33} The State failed to affirmatively demonstrate that there were good reasons for the delay; that Defendant did not timely assert his right and acquiesced in the delay; or that Defendant was not actually prejudiced by the delay, in the face of presumed prejudice and Defendant's assertions of actual prejudice. Under the circumstances, and given the length of the delay in this case, we conclude that this factor also weighs in Defendant's favor. *See Lujan,* 2003–NMCA–087, ¶ 29, 134 N.M. 24, 71 P.3d 1286 (concluding that the defendant's right to a speedy trial was violated because of a mostly unexplained thirty-five-month delay despite the defendant's equivocal showing of actual prejudice); *Marquez,* 2001–NMCA–062, ¶¶ 29–30, 130 N.M. 651, 29 P.3d 1052 (stating that the question for purposes of speedy trial analysis is whether anxiety and concern, once established, has continued for an unacceptably long period, and concluding that an eighteen-month delay was unacceptably long).

## 5. Balancing the Factors

{34} The length of delay in this case was extraordinarily long, giving rise to a presumption of prejudice. The State was

required to show "[t]here were good reasons for the delay." *Work,* 111 N.M. at 147, 803 P.2d at 236. The State failed to do so. Instead, this case shows that most of the delay was caused by the State's failure to schedule its witnesses for interviews, despite acknowledging its duty to do so, despite its promises to do so, and despite being granted many opportunities to do so by the district court and the Supreme Court. The record suggests that this delay was caused by personal problems of the prosecutor. However, such problems do not override a defendant's constitutional right to a speedy trial. *See Turner v. United States,* 622 A.2d 667, 676 (D.C.Cir.1993) (noting that delays due to personal problems of the prosecutor are attributed to the prosecution); *People v. Adams,* 59 Ill.App.3d 590, 16 Ill.Dec. 786, 375 N.E.2d 893, 896 (1978) (concluding that a prosecutor's illness is insufficient to justify delay when a defendant asserts his constitutional right to a speedy trial). Consistent with these authorities, the State has the constitutional duty to bring a criminal case to trial within a reasonable time. It failed to do so in this case, and for that reason, we weighed the reasons for the delay against the State. Finally, Defendant's assertion of his right to a speedy trial and the prejudice resulting from the delay weigh in Defendant's favor. We therefore conclude Defendant's constitutional right to a speedy trial was violated.

## CONCLUSION

{35} The judgment and sentence are reversed and the cause is remanded to the district court with instructions to dismiss the charges against Defendant. In light of this disposition, we do not address the remaining issues raised by Defendant in this appeal.

{36} **IT IS SO ORDERED**

WE CONCUR: CYNTHIA A. FRY and RODERICK T. KENNEDY, Judges.