This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                      **NO. 29,026**

**DAVID JENKINS**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

In this case, Defendant's primary argument is that his right to a speedy trial was violated. He also argues that the district court erred and abused its discretion in making a number of rulings at trial. Defendant requests that his case be either dismissed or remanded for a new trial. We are unpersuaded by Defendant's arguments, and we affirm the rulings of the district court.

**BACKGROUND**

On April 15, 2005, Defendant was arrested and charged with multiple counts of criminal sexual penetration of a child under the age of thirteen, multiple counts of criminal sexual contact of a minor, and other related charges based on allegations he sexually assaulted two girls, who are cousins, on multiple occasions. The victims were approximately ten and twelve years old at the time. Defendant's trial commenced on April 28, 2008. Defendant was convicted of multiple counts and sentenced to 403 and one-half years of incarceration with sixty of those years suspended. Additional facts will be developed in the context of the issues raised.

**DISCUSSION**

Defendant makes five arguments on appeal. First, he contends his right to a speedy trial was violated. Second, Defendant argues that the district court erred in denying his motion for mistrial. Third, Defendant submits that the district court committed plain error in allowing the nurses who evaluated the victims to testify about

statements the children made concerning the nature of the sexual abuse. Fourth, Defendant claims that the district court erred in denying his motion to suppress the testimony of Officer Frank Muñoz. Fifth, Defendant asserts that the district court erred in denying him the opportunity to impeach a witness, the mother of one of the victims, with specific facts about a former conviction. We address each in turn.

**Speedy Trial**

"The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. The Sixth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

*Garza*, 2009-NMSC-038, ¶ 10 (internal quotation marks and citation omitted). "Violation of the speedy trial right is only determined through a review of the circumstances of a case, which may not be divorced from a consideration of the State and the defendant's conduct and the harm to the defendant from the delay." *Id.* ¶ 13. "Accordingly, we have adopted the balancing test created by the United States

3

Supreme Court in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]." *Garza*, 2009-NMSC-038, ¶ 13.

> In *Barker*, the United States Supreme Court created a balancing test, in which the conduct of both the prosecution and the defendant are weighed. The Court identified four factors: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated.

*Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

The *Barker* "formulation necessarily compels courts to approach speedy trial cases on an ad hoc basis" and requires them to reject "inflexible, bright-line approaches to analyzing a speedy trial claim." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "On appeal, we give deference to the factual findings of the district court; nevertheless, we are required to independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *Johnson*, 2007-NMCA-107, ¶ 5.

**Length of delay**

4

Appellate courts consider the length of delay for two reasons: (1) as "a threshold inquiry that triggers the rest of the analysis" and (2) "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. The delay in this case amounted to thirty-six and one-half months from the date of arrest on April 15, 2005 to the date trial commenced on April 28, 2008. The district court found that Defendant's case is complex. We adhere to the post-*Garza* guidelines because the motion to dismiss in this case was filed on March 4, 2008. 2009-NMSC-038, ¶ 50. The post-*Garza* guidelines establish eighteen months of delay as presumptively prejudicial for a complex case. *Id.* ¶ 48. The State concedes that the delay was presumptively prejudicial and that consideration of the *Barker* factors is required.

"If a court determines that the length of delay is presumptively prejudicial, then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right." *Id.* ¶ 23 (internal quotation marks and citation omitted). In its order, the district court failed to address how the length of delay should be weighed. The delay here extended eighteen and one-half months beyond the bare minimum. This factor weighs in favor of Defendant and against the State. *See State v. Plouse*, 2003-NMCA-048, ¶ 43, 133 N.M. 495, 64 P.3d 522 (holding that a total delay of twenty-one months in a complex case, six months

beyond the bare minimum, weighed in the defendant's favor); *see also Johnson*, 2007-NMCA-107, ¶ 8 (holding that a total delay of twenty-six months in a complicated case, eleven months over the bare minimum, weighed against the state).

**Reasons for the delay**

The district court found that the entire period of delay was attributable to Defendant and concluded that this factor weighs heavily against him. Defendant contends on appeal that this determination was in error and that this prong weighs in his favor. He claims that the delay is attributable to the State because it failed to bring him to trial in a timely fashion and also attributable to the varying court-appointed attorneys who represented him who, he claims, did little to work on his case. We begin by reviewing the record and the district court's findings as to the cause for the delay.

Defendant was arrested on April 15, 2005. On May 5, 2005, Susan Burgess-Farrell, Defendant's first court-appointed attorney, made an entry of appearance. Burgess-Farell remained Defendant's attorney until March 15, 2007, twenty-two months and ten days later. At that time, she discovered a conflict which prevented her from further representing Defendant.

During the period of time Burgess-Farrell represented Defendant, the district court granted nine motions for continuance. Of these, all but one were joint motions.

The one motion which was not jointly filed includes a notation, indicating that Burgess-Farrell failed to appear in court. Five petitions to extend the Rule 5-604 NMRA date were also filed and granted during this time. All but one of these petitions were also filed jointly. Defendant opposed the third of the five petitions. In its order, the district court found that the delay during Burgess-Farrell's representation of Defendant was a result of "issues related to discovery, computer data retrieval, and other trial preparation matters."

On March 19, 2007, four days after Burgess-Farrell withdrew, Eric Turner entered his appearance to represent Defendant. Turner withdrew shortly thereafter because he also discovered that a conflict precluded him from representing Defendant.

On April 10, 2007, Sandy Barnhart y Chavez was appointed to represent Defendant. Defendant and Barnhart y Chavez's relationship deteriorated, however, and, on December 10, 2007, Defendant filed a pro se motion for appointment of substitute counsel. In that motion, Defendant explained that Barnhart y Chavez had "violated the bond of trust" and that he did not "feel comfortable[] with female counsel[] for various [reasons]." Barnhart y Chavez later filed a motion to withdraw, which was granted on January 28, 2008.

During the nine months and eighteen days Barnhart y Chavez represented Defendant, the district court granted one stipulated continuance, and our Supreme

7

Court granted three stipulated petitions to extend the Rule 5-604 date. The district court found that the delay during this period of time was attributable to Barnhart y Chavez's need to familiarize herself with Defendant's case, logistics, and other trial preparation matters.

On February 8, 2008, Marcus Cameron was appointed to represent Defendant. A month after his appointment, Cameron submitted a request to extend the Rule 5-604 date. The Supreme Court granted an extension through April 28, 2008. Jury selection commenced on that date, but was not completed, and so a final petition to extend the rule date was filed and granted. Jury selection completed on April 29, 2008. Defendant's trial began immediately thereafter and concluded on May 8, 2008. As to the delay during the roughly two and one-half months Cameron represented Defendant, the district court determined that the delay was attributable to trial preparation.

Defendant relies primarily on *Stock* for his argument that the reasons for delay should weigh in his favor. In that case, we weighed the reasons for delay prong against the State despite the fact that the public defenders who represented the defendant precipitated the delay. 2006-NMCA-140, ¶ 1. All three public defenders testified that they were working under extreme and unworkable case load levels. *Id.* ¶ 8. The district court determined that "it was 'humanly impossible for [these]

lawyers to practice law under the conditions that we're asking them to practice law.'" *Id.* ¶¶ 10, 26. In light of this evidence, the district court refused to weigh the reasons for the delay against the defendant despite the fact that his attorneys were technically the cause of the delay. *Id.* ¶ 10. Moreover, the district court found that the defendant had the intellectual capacity of a twelve year old, which rebutted any suggestion that the defendant had considered and acquiesced to his public defenders' actions. *Id.* ¶ 11. The district court concluded that the ultimate burden to move the defendant's case forward rested with the State and, therefore, weighed the reasons for the delay against it. *Id.*

We affirmed the district court's analysis. *Id.* ¶ 29. Although we recognized the general rule that a defendant must be accountable for the actions of his or her attorney, we stated that, in certain cases, attorney neglect cannot be held against a defendant. *Id.* ¶ 22. We concluded that the defendant's case was just such a case and emphasized the district court's findings. *Id.* ¶ 26. We further agreed with the district court that it is ultimately the state's duty to bring a defendant to trial and concluded that the state had acted with bureaucratic indifference. *Id.* ¶¶ 25, 29. We concluded, as did the district court, that the reasons for delay weighed against the state. *Id.* ¶ 29.

Defendant's case is not analogous to *Stock*. The district court did not find that the delay here was the result of attorney neglect occasioned by institutional

shortcomings within the public defender system. Rather, the district court found that the numerous stipulated continuances and rule extensions filed prior to Defendant's trial were filed for good reason. The district court explained that it granted and continued granting continuances because it was persuaded that "the parties were making diligent efforts to prepare . . . for trial." At the outset of its order, the district court made clear that Defendant's case was complex and involved a forty-one count indictment. In our view, the general rule, not the exception recognized in *Stock*, applies here. Defendant is accountable for the actions of his attorneys. *Id.* ¶ 22.

While we agree with Defendant that it is ultimately the State's burden to bring a criminal defendant to trial in a timely manner, *id.* ¶ 25, we are unpersuaded that the State failed to make a diligent good faith effort to do so here. The record indicates that a large number of the continuances and rule extensions were for the benefit of Defendant. Each of Defendant's attorneys requested continuances in order to familiarize themselves with Defendant's case. The State objected to one of these requests. Defendant's assertion that the delay was caused by a lack of effort on the State's part is not borne out by the record.

We do not agree with Defendant that this prong should weigh in his favor. However, we also do not agree with the district court's conclusion that the reasons for the delay weigh heavily against Defendant. Delay occasioned by jointly requested

continuances weighs neutrally. *State v. Valencia*, 2010-NMCA-005, ¶ 21, 147 N.M. 432, 224 P.3d 659, *cert. denied*, 2009-NMCERT-012, 147 N.M. 600, 227 P.3d 90. As described above, the district court expressly concluded that nearly all of the continuances and the rule extension petitions were jointly filed. These continuances were the primary cause of the delay here. Accordingly, the delay will not be charged against either party and weighs neutrally.

**Assertion of the right**

"[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Garza*, 2009-NMSC-038, ¶ 31 (internal quotation marks and citation omitted). "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. "Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether . . . the issue was raised on appeal as afterthought." *Id.* "It is necessary, therefore, to closely analyze the circumstances of each case." *Id.* ¶ 33.

The district court concluded that this factor weighed against Defendant. The court explained that aside from pro forma assertions, Defendant never complained

about nor took any meaningful action to exercise the right. On appeal, Defendant contends that this prong should be weighed heavily in his favor. Defendant's arguments, which we address below, do not persuade us.

Defendant points out that each of his four attorneys filed pro forma demands for speedy trial when they entered their appearances. However, "[e]arly pro forma assertions are generally afforded relatively little weight." *Valencia*, 2010-NMCA-005, ¶ 27. Defendant also emphasizes that he filed two pro se speedy trial motions. The first of these was filed on December 10, 2007. On that date, Defendant also simultaneously filed a motion for appointment of substitute counsel in which he explained that he did not "feel comfortable[] with female counsel[] for various [reasons]." Defendant's actions with regard to the delay are part of our consideration. *Garza*, 2009-NMSC-038, ¶ 32. As such, we give little weight to the December 10, 2007 pro se motion. It is wholly inconsistent for Defendant to, on one hand, object to his attorney's gender and request appointment of substitute counsel while, on the other hand, simultaneously assert that his right to a speedy trial is being violated.

Defendant's second pro se speedy trial motion was filed on February 13, 2008. This was the first time Defendant meaningfully exercised the right. Roughly one month later, Cameron filed a lengthy motion to dismiss for violation of the right. Defendant was tried on April 29, 2008, two months after the second pro se motion was

12

filed. Generally, the closer to trial an assertion is made, the less weight it is given. *See State v. O'Neal*, 2009-NMCA-020, ¶¶ 25-26, 145 N.M. 604, 203 P.3d 135 (determining that under the facts of that case, the defendant's assertion of his speedy trial right twenty-two days before trial did not weigh in his favor); *State v. Downey*, 2007-NMCA-046, ¶ 44, 141 N.M. 455, 157 P.3d 20 (concluding that the defendant's first assertion of the speedy trial right eleven days before trial and thirty months after his arrest did not weigh in his favor), *rev'd on other grounds*, 2008-NMSC-061, 145 N.M. 232, 195 P.3d 1244. Some thirty plus months transpired before Defendant meaningfully asserted his right and, two months after doing so, Defendant's trial commenced. Accordingly, we find no error in the district court's conclusion that this factor weighs against Defendant.

**Prejudice**

We examine prejudice in light of the interests the speedy trial right was designed to protect. *Garza*, 2009-NMSC-038, ¶ 35. These interests include: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* (internal quotation marks and citation omitted). As to the first two of these interests, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. *Id.* We do not engage in speculation as to the impact of pretrial

13

incarceration, or as to the anxiety a defendant may suffer as a result of that incarceration. *Id.* Accordingly, Defendant cannot demonstrate prejudice by simply claiming that he remained in jail while awaiting trial, or by generally claiming he suffered anxiety and other ill effects. Rather, Defendant "must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. Only "undue" oppressive pretrial incarceration and undue anxiety constitutes particularized prejudice. *Id.* ¶ 35.

The district court concluded that the prejudice factor weighs "ever so slightly" in favor of Defendant "in view of the lengthy pre-trial incarceration." Yet, the district court also expressly concluded that the pretrial incarceration Defendant was subjected to was not undue. These conclusions are contradictory. Defendant asks us not only to affirm the district court's conclusion, but to weigh this factor heavily in his favor. We decline to do so. As we explain below, we conclude that Defendant failed to demonstrate that he suffered prejudice.

Defendant emphasizes that he remained imprisoned for the entire period of pretrial delay, thirty-six and one-half months. As a result, Defendant claims he suffered depression, lost his job as a postal worker, lost contact with friends, and lost two pets. As noted, some degree of pretrial incarceration and anxiety is inherent for every defendant who is jailed while awaiting trial. *Id.* We examine the totality of the

14

circumstances to determine whether the pretrial incarceration, the anxiety, and the other infirmities Defendant complains of are undue. *Id.*

In discussing the reasons for the delay in this matter, we concluded that the delay weighed neutrally as it was occasioned by jointly filed continuances and rule extensions. This conclusion is significant. Defendant cannot complain that he was prejudiced by delay for which he was partly responsible. Defendant testified that he lost his job immediately after he was charged. Consequently, the length of the delay has no bearing on his termination. The district court rejected Defendant's claim that his anxiety and depression intensified during pretrial incarceration and observed that Defendant was suicidal before he was imprisoned. Losing contact with friends and the inability to care for pets are inherent consequences that defendants face while jailed and awaiting trial. We also observe that Defendant was eligible for bond, that bond was reasonable in light of the offenses with which Defendant was charged, but that Defendant did not, or was unable to, post bond. For these reasons, we conclude, as did the district court, that the pretrial incarceration, the anxiety Defendant suffered, and the other adverse consequences Defendant experienced as a result of pretrial incarceration were not undue and cannot serve as a basis to prove Defendant suffered particularized prejudice.

Defendant also argues that the pretrial delay impaired his defense. This "type

of prejudice is the most serious" but it is still "necessary for a defendant to substantiate this type of prejudice." *Id.* ¶ 36 (internal quotation marks and citation omitted). Defendant argues that the evidence in his case was not stored properly during the period of time Defendant awaited trial and, therefore, his ability to adequately defend himself was prejudiced. Specifically, Defendant argues that the evidence in his case was placed in plastic and that this foreclosed his ability to obtain DNA samples. The district court concluded that the delay did not impair Defendant's defense in anyway.

Defendant devoted only two sentences to this argument on appeal. He has provided us no evidence that he attempted to obtain DNA samples, but was prevented from doing so as a result of the storage problem. In addition, Defendant has not explained how the absence of DNA samples impaired his defense. Defendant has not provided us any reason to reverse the district court's findings and conclusions.

In conclusion, we reverse the district court's determination that the prejudice factor weighs slightly in Defendant's favor. Defendant failed to prove he was prejudiced by the delay.

**Balancing**

The length of delay weighs in favor of Defendant. The reasons for the delay weigh neutrally. The assertion of the right weighs against Defendant. Finally,

16

Defendant failed to demonstrate that he suffered prejudice. Under these circumstances, we reject Defendant's assertion that his right to a speedy trial was violated. *See id.* ¶ 40 ("[The d]efendant failed to show prejudice, and the other factors do not weigh heavily in [the d]efendant's favor. . . . [W]e cannot conclude that [the d]efendant's right to a speedy trial was violated.").

**Ineffective Assistance of Counsel**

Defendant contends that if we do not conclude that his right to a speedy trial was violated, we may nonetheless conclude that Burgess-Farrell and Barnhart y Chavez provided ineffective assistance of counsel for failing "to move his case along" and that his convictions should be reversed for this reason. The State correctly characterizes this argument as cursory; Defendant dedicated less than a page to it.

"To make a prima facie case [of ineffective assistance of counsel], [the d]efendant has the burden of proving (1) that counsel's performance fell below that of a reasonably competent attorney and (2) that [the d]efendant was prejudiced by the deficient performance." *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. "With respect to the showing that counsel's deficient performance prejudiced the defense, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 27, 130 N.M. 198,

22 P.3d 666 (alteration in original) (internal quotation marks and citation omitted). Defendant does not object to the effectiveness of Cameron's representation at trial. He also does not argue that the result at trial, or at any other proceeding, was affected by Burgess-Farrell and Barnhart y Chavez's representation. Rather, he argues that Burgess-Farrell and Barnhart y Chavez were ineffective simply because they did no work on his case. This, by itself, is not a sufficient basis for an ineffective assistance of counsel claim.

**Defendant's Motion for Mistrial**

During voir dire, one of the prospective jurors admitted that he could not be fair and impartial. This individual further stated, in front of the other prospective jurors, that he believed Defendant was guilty. This individual was properly excused for cause. Soon afterward, Defendant moved for a mistrial on grounds that the excused prospective juror's comments purportedly tainted all of the prospective jurors. The district court denied this motion, completed voir dire, and empaneled a jury. Defendant appeals the denial of the motion for mistrial.

"We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. "An abuse of discretion occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial

court abused its discretion . . . unless we can characterize [its ruling] as clearly untenable or not justified by reason." *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602 (alterations in original) (internal quotation marks and citation omitted). We are also mindful of the fact that "the power to declare a mistrial should be exercised with the greatest caution." *State v. Sutphin*, 107 N.M. 126, 130, 753 P.2d 1314, 1318 (1988).

The issue is whether the comments by the excused prospective juror unfairly affected the deliberative process of the jury, which was ultimately empaneled, such that the jury was stripped of its ability to be fair and unbiased. *State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47. The district court was unpersuaded that the prospective juror's comments had this effect. We find no abuse of discretion in this determination.

As was the case in *Gardner*, the excused prospective juror's comments occurred prior to the swearing in of the jury. *Id.* When sworn in, the jury gives an oath to arrive at a verdict according to the evidence and the law contained in the instructions of the court. *Id.* We have been given no reason to suspect that the jury failed to fulfill their duty under this oath. As was also the case in *Gardner*, Defendant's argument is highly speculative. *Id.* Indeed, Defendant has not provided a single, factual basis for his claim that the empaneled jury was biased by the prospective juror's comments.

We affirm the district court's denial of the motion for mistrial.

**The Nurses' Testimony**

Both victims testified at trial and described the sex acts they were forced to engage in with Defendant. The State also called the two nurses who examined the victims after the sexual abuse came to light. The nurses testified at length about the examinations they performed. During the initial stages of the examinations, the nurses obtained histories of the victims and asked detailed questions about the sex acts Defendant made them perform. The nurses testified about the victims' responses to these questions. Defendant did not object to the testimony. On appeal, Defendant cites case law construing Rule 11-803(D) NMRA and claims that the nurses' testimony regarding the victims' statements about what sex acts Defendant made them perform was wrongly admitted.

Having failed to object at trial, Defendant may be entitled to relief if the admission of the nurses' testimony constitutes plain error. *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). The plain error rule applies only to evidentiary matters. *Id.* at 454, 863 P.2d at 1075. "[T]he very point of the rule is to permit review of grave errors in the admission of evidence." *Id.* at 453, 863 P.2d at 1074 (internal quotation marks and citation omitted). Defendant must persuade us "that admission of the testimony constituted an injustice that creates grave doubts concerning the

20

validity of the verdict." *Id.* (internal quotation marks and citation omitted).

Defendant's argument implicates Rule 11-803(D), which provides the following:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Defendant cites several cases interpreting this rule that have been overruled by *State v. Mendez*, 2010-NMSC-044, ¶ 20, 148 N.M. 761, 242 P.3d. 328. *Mendez* controls here.

In *Mendez*, our Supreme Court explained that "[t]wo underlying rationales traditionally animate Rule 11-803(D). First, the help-seeking motivation counsels that the declarant's self-interest in obtaining proper medical attention renders the usual risks of hearsay testimony . . . minimal when associated with medical treatment." *Mendez*, 2010-NMSC-044, ¶ 20 (alteration in original) (internal quotation marks and citation omitted). The second, commonly referred to as pertinence, "is that if a statement is pertinent to a medical condition, such that a medical care provider reasonably relies upon it in arriving at a diagnosis or treatment, the statement is deemed sufficiently reliable to overcome hearsay concerns." *Id.* ¶ 21.

"Trustworthiness can be established under either rationale alone, or some degree of both." *Id.* ¶ 23.

The nurses explained that they asked the victims about the specific sex acts Defendant had them perform to guide them in their evaluations, to identify what tests they would need to administer during the evaluations, to identify and treat any injuries the victims may have sustained, and to evaluate whether the vicitms may have contracted sexually transmitted diseases. This testimony demonstrates that the nurses reasonably relied on the victims' statements in treating and diagnosing them. The nurses' hearsay statements are reliable under the pertinence prong of Rule 11-803(D) and, thus, admissible. The district court did not err in admitting these statements.

Defendant also contends that Cameron's failure to object to the admissibility of the nurses' testimony constituted ineffective assistance of counsel. As we described above, to prevail on an ineffective of assistance of counsel claim Defendant must show that Cameron's deficient performance prejudiced Defendant. *See Martinez*, 2007-NMCA-160, ¶ 19. To prove prejudice, Defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Lytle*, 2001-NMSC-016, ¶ 27. Whether Cameron objected to the testimony, as Defendant contends he should have, is inconsequential because the nurses' testimony was admissible. We reject Defendant's alternative argument.

**Officer Frank Muñoz's Testimony**

On March 28, 2005, the victims reported the sexual abuse to the police. A warrant for Defendant's arrest was issued, and officers proceeded to Defendant's home, but were unable to locate him. That evening, Officer Muñoz was performing his regular duties and observed an individual, who was later identified as Defendant, walking down the street bleeding profusely from his wrists. The officer approached Defendant and asked what happened. Defendant responded that he had slashed his wrists in an attempt to commit suicide. The officer summoned medical assistance and only later learned that there was a warrant for Defendant's arrest. Defendant was taken to the hospital and confined there until April 15, 2005, at which time, he was officially arrested for sexually assaulting the victims.

At trial, Defendant filed a motion to suppress to prevent Officer Muñoz from testifying about Defendant's failed suicide attempt and to exclude photographs that were taken of Defendant's self-inflicted injuries. The basis of the suppression motion was that the officer's stop was pretextual. The district court denied the motion and concluded that it "certainly [was] not pretextual." Defendant challenges this decision on appeal.

Defendant relies exclusively on *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143, *cert. quashed*, 2009-NMCERT-011, 147 N.M. 464, 225 P.3d 794,

for his contention that Officer Muñoz engaged in a pretextual stop. *Ochoa* involved a traffic stop and discussed pretextual stops in that specific context. *Id.* ¶ 1. Here, Defendant was not in a vehicle, but was walking down a street. No traffic stop occurred. Thus, we have concerns about the applicability of *Ochoa* here. Putting those concerns aside and assuming *Ochoa* does control, Defendant's argument still fails.

*Ochoa* instructs that "[t]he defendant has the burden of proof to show pretext based on the totality of the circumstances. If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* ¶ 40. Defendant has not identified any facts which indicate Officer Muñoz was engaged in pretext or ruse. Indeed, the officer testified that he knew nothing about Defendant when he approached him and did not suspect any criminality whatsoever at that time. Rather, the officer stated that he saw a person bleeding profusely and felt compelled to provide assistance. Defendant has failed to carry his burden that the officer engaged in a pretextual stop.

**Impeachment of Witness**

Julie Godbey testified for the State. Godbey identified herself as the mother of one of the victims and the aunt of the other victim. She lived with Defendant for some

time. Godbey described the circumstances that led her to suspect Defendant was having inappropriate relations with the victims and explained that she found a locked, metal box in Defendant's closet, which contained numerous provocative pictures of her niece, child pornography, and dildos. Upon discovering this material, she took the victims to speak to the police and gave the police the materials she discovered.

Godbey admitted, during direct examination, that she had a previous conviction for counterfeiting. The State asked her to confirm that she understood the importance of testifying truthfully, and Godbey responded that she understood the importance of doing so. On cross-examination, Defendant attempted to impeach Godbey with specific facts related to her previous conviction. The district court determined that this was impermissible under Rule 11-608(B) NMRA, which provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness . . . may not be proved by extrinsic evidence." On appeal, Defendant contends this ruling was erroneous.

Defendant neither cites nor discusses Rule 11-608(B) at any point in his brief-in-chief. Nor does he argue that the district court erroneously interpreted or applied Rule 11-608(B). Rather, Defendant claims that the district court's decision, denying him the opportunity to impeach Godbey in the manner described, impinged on his rights under the New Mexico Constitution to present a defense. As such, he concludes

25

the district court abused its discretion. Defendant has provided us no basis to conclude that the district court abused its discretion.

The argument Defendant makes on appeal is different from the one made to the district court. Generally, matters not raised in the trial court may not be raised for the first time on appeal. *State v. Steven B.*, 2004-NMCA-086, ¶ 26, 136 N.M. 111, 94 P.3d 854. Defendant provides no authority to support a review of this issue based on a new argument. When a party cites no authority in support of a proposition, we assume that no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Accordingly, we decline to review this issue because it was not preserved. *See Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶ 39, 128 N.M. 470, 994 P.2d 50 (declining to address arguments not made at trial for lack of preservation).

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

26

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**

27